IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTY BOANES, JUNIOR, | : | |
| | : | |
| Petitioner | : | |
| | : | CIVIL NO. 1:11-CV-0169 |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| MARIROSA LAMAS, *et al.*, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

May 30, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Petitioner Marty Boanes, Junior ("Petitioner" or "Boanes"), a state inmate presently confined at the Clinton County Correctional Facility in McElhattan, Pennsylvania, commenced this *pro se* action by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2254.  (Doc. 1.)  He challenges his 2003 conviction in the Court of Common Pleas of York County, Pennsylvania of Criminal Attempt-Criminal Homicide; Aggravated Assault (both serious bodily injury and bodily injury caused with a firearm); Possession of a Firearm by a Minor; and Recklessly Endangering Another Person.  The Petition is fully briefed and ripe for disposition.  For the reasons set forth herein, the Petition will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In affirming the denial of Boanes' Post-Conviction Relief Act ("PCRA")

Petition, the Pennsylvania Superior Court set forth the following summary of the

relevant facts and procedural history, as adopted from the PCRA Court's Opinion and

Order:

> A Criminal Complaint was filed on August 26, 2002 charging [Boanes]
> with Criminal Attempt-Criminal Homicide; Aggravated Assault (both
> serious bodily injury and bodily injury caused with a firearm); Possession
> of a Firearm by a Minor; and Recklessly Endangering Another Person.
> The charges were 'direct filed' as a result of [Boanes] being a 16-year old
> juvenile at the time of the filing.
>
> The charges stemmed from [Boanes'] discharging a handgun and
> shooting the victim, Richard Newson, at an intercity York location on
> August 21, 2002, at approximately 2:30 A.M.  The facts of the case
> developed at trial indicate that [Boanes] and Newson were first cousins
> and Newson resided at an apartment, which was the site of the shooting,
> at 601 West King Street, York, Pennsylvania.  During the day preceding
> the shooting, [Boanes] had spent the afternoon and evening with a female
> acquaintance, Etay Clay, and had consumed both beer and liquor
> (Hennessey [and] Cognac), as well as smoked marijuana and ingested
> ecstasy.  During the early morning hours of August 21, 2002, [Boanes]
> discovered that Ms. Clay was at Newson's residence and proceeded to
> that location to confront Newson. [Boanes] considered these
> circumstances to indicate that Newson had 'disrespected' him by having
> Clay, [whom Boanes] was 'messing with,' at his residence.  Upon
> arriving at Newson's residence [Boanes] produced a handgun and
> questioned Newson over these circumstances and after a brief verbal
> confrontation, [Boanes] departed.  A short time later [Boanes] returned
> and on this reappearance again produced the handgun, whereupon he shot
> Newson in the abdomen at close range.  Newson survived the shooting.
>
> [Boanes] was arrested and charged with the referenced offenses on

August 26, 2002. [Counsel] was privately retained to represent [Boanes] shortly after the filing of charges. A decertification application, seeking to return the proceedings to Juvenile Court, was filed on behalf of [Boanes]. Following a hearing on May 28, 2003, that request was denied and refused. The matter proceeded to a jury trial on July 7 & 8, 2003, at the conclusion of which, a verdict was returned finding [Boanes] guilty [on all counts]. Following the Verdict the Commonwealth filed a notice Seeking Mandatory Sentencing Provisions § 9712 and § 9714 of the Judicial Code regarding offenses committed with a firearm.

At the sentencing hearing on August 18, 2003, [Boanes] was sentenced to 15 to 30 years at a State Correctional Institution for the offense of Criminal Attempt-Criminal Homicide, as well as 1 to 2 years concurrent for the offenses of Firearms Not to be Possessed by a Minor. The charge of Aggravated Assault merged with the charge of Criminal Attempt-Criminal Homicide. A direct appeal was filed on [Boanes'] behalf by [trial counsel] on September 16, 2003. That appeal was dismissed on November 10, 2003, for [counsel's] failure to file the required docketing statement under Pennsylvania Rule of Appellate Procedure No. 3517.

[Boanes] filed his first *pro se* PCRA Petition to the Superior Court of Pennsylvania on November 6, 2006, that Petition was reassigned to [the] Trial Court. After a hearing on that application the Trial Court reinstated [Boanes'] direct appeal rights on February 20, 2007. The Commonwealth filed an appeal from that Order and the Superior Court of Pennsylvania affirmed the Trial Court's Order by Memorandum Opinion on December 26, 2007. [footnote omitted] Thereafter, appointed counsel . . . filed [a] direct appeal on January 7, 2008, but subsequently discontinued [the] direct appeal March 11, 2008, electing to proceed with the current and pending PCRA petition, which was duly filed on April 3, 2008.

(Doc. 17-2 at 124-127, 10/29/09 Pa. Super. Ct. Mem. Op.)[1]

---

[1] Throughout this Memorandum, citations to page numbers of documents filed to the docket in this action refer to the page numbers generated by the CM/ECF System.

In the instant Petition, Boanes reiterates the grounds raised in his PCRA

Petition as follows:

A.  Trial counsel was ineffective for eliciting testimony from [Boanes] on direct examination that: (1) Boanes' parents had been, or were, incarcerated; (2) the gun used in the incident was not the first gun [Boanes] owned; (3) [Boanes] was thirteen (13) years old when he started owning guns; (4) [Boanes] obtained his first gun 'off the street'; (5) [Boanes] routinely possessed a gun since the age of thirteen; (6) [Boanes] carried a gun since he was sixteen (16), after he got out of juvenile placement; and (7) [Boanes] bought or obtained all of his guns 'off the streets';

B.  Trial counsel was ineffective for advising the jury in his opening statement that Boanes had possessed a firearm ever since he was twelve (12) years old;

C. [Trial counsel was ineffective for] opening the door for cross-examination that: (1) Boanes obtained the gun he used in this instance from a drug addict off the street; (2) [Boanes] came back to the scene ten (10) minutes after the first confrontation with the same gun;

D. [Trial counsel was ineffective for] eliciting extensive testimony from [Boanes] relating to his drug usage, but never eliciting testimony that Boanes was intoxicated and under the influence of controlled substances relating to the specific intent to kill as an element of attempted murder;

E. [Trial counsel was ineffective for] eliciting testimony from [Boanes] that he ingested drugs and alcohol on the date of the incident knowing the court would not give an instruction to the jury that involuntary intoxication was not an affirmative defense to attempted murder;

F. [Trial counsel was ineffective for] failing to argue and request a jury instruction that, while voluntary intoxication is not an affirmative defense to attempted murder, it is still relevant to Boanes' state of mind as to whether he formed the specific intent to kill.

4

(Doc. 1 at 3-4.)

Following a hearing on the PCRA Petition on August 5, 2008, by Memorandum

Opinion and Order dated October 9, 2008, the PCRA Court denied Boanes' Petition.

(Doc. 17-2 at 77-86, 10/9/08 PCRA Court Op.)  In disposing of the Petition, the

PCRA Court summarized the issues raised by Boanes at hearing as follows:

> 1.  Was Trial Counsel ineffective in eliciting testimony and evidence
> regarding [Boanes'] early exposure to 'street values and activities' in an
> effort to create sympathy and understanding for [Boanes] and his actions?
>
> 2.  Was Trial Counsel ineffective in eliciting testimony and evidence
> regarding [Boanes'] use of alcohol, marijuana and ecstasy during the day
> and evening preceding the shooting?

(*Id.* at 80.)  The PCRA Court concluded that Boanes failed to demonstrate "a

reasonable probability" that the result of the proceedings would have been different

had the evidence elicited by his counsel not been introduced.  (*Id.* at 84, 10/9/08

PCRA Court Op.)  The PCRA Court therefore found that Boanes failed to establish

prejudice as a result of his counsel's performance and was not entitled to PCRA relief.

(*Id.*)  In considering whether counsel's course of conduct was without a reasonable

basis, including his strategy to elicit testimony regarding Boanes' exposure to "street

values" and use of alcohol and drugs to create sympathy and understanding for

Boanes' actions, the PCRA Court concluded, "[a]lthough this evidence apparently did

not negate and overcome the Commonwealth's overwhelming evidence, this Court is

5

unable and unwilling to conclude that there was no reasonable basis behind [trial counsel's] strategy." (*Id.* at 84-86.)  Accordingly, the Petition was denied.  (*Id.* at 86.)

Boanes filed a Notice of Appeal to the Pennsylvania Superior Court from the denial of PCRA relief.  (*See* Doc. 17-2 at 87, Notice of Appeal.)  In his Concise Statement of Matters Complained of on Appeal filed in accordance with Pa. R. App. P. 1925(b), Boanes raised the following issues for review:

A.  Whether trial counsel was ineffective as follows:

1.  eliciting testimony from [Boanes] that his parents had been or were incarcerated in both the York County Prison and state facilities (T.T. PP. 124-125)

2.  eliciting testimony from [Boanes] through his direct examination that the gun that [Boanes] used in the incident was not the first gun he had ever possessed and/or owned (T.T. PP. 137-139)

3.  that [Boanes] was thirteen (13) years old when he started owning guns (T.T. PP. 137-139)

4.  that [Boanes] obtained his first gun off the street (T.T. PP. 137-139)

5.  that [Boanes] routinely possessed a gun since the age of thirteen (13) years old (T.T. PP. 137-139)

6.  that [Boanes] started walking around with a gun when he turned sixteen (16) when he first came out of juvenile placement (T.T. PP. 137-139)

7. that [Boanes] bought or obtained all of his guns off the streets (T.T. PP. 137-139)

8. permitting testimony on cross examination that [Boanes] obtained the gun used in the instant action from a drug addict off the street (T.T. P. 141)

9. eliciting testimony at trial that [Boanes] was intoxicated or under the influence of controlled substances and/or alcohol during the course of trial;

10. eliciting such testimony not knowing that voluntary intoxication was not a defense to the charge of attempted homicide;

11. failing to adequately prepare [Boanes] and advise him as to issues for which he would be testifying to at trial;

12. eliciting testimony that [Boanes] was in juvenile placement previously (N.T. PP. 9-10);

13. not advising [Boanes] that he would be giving testimony concerning his intoxication and how that may be a possible defense (N.T. PP. 11-12)

14. not providing a sufficient explanation for counsel's strategy in eliciting the testimony as described herein.

(Doc. 17-2 at 116-17.)   In his brief on appeal to the Pennsylvania Superior Court,

Boanes articulated the issue on review as follows:

WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN ELICITING TESTIMONY AT TRIAL CONCERNING PRIOR BAD ACTS OF APPELLANT AND OTHER MATTERS WHICH PREJUDICED

APPELLANT AT TRIAL.[2]

(Doc. 17-2 at 102, Boanes' App. Br.)  By Memorandum Opinion dated October 29, 2009, the Pennsylvania Superior Court determined that the record supported the PCRA Court's decision to deny relief and therefore affirmed the denial of Boanes' PCRA Petition.  (*Id.* at 124-135.)

Boanes filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied by Order dated May 5, 2010.  (*Id.* at 175.)

On January 25, 2011, Boanes filed the instant Petition in which he seeks review of his issue as to whether trial counsel was ineffective for eliciting irrelevant, prejudicial testimony and evidence about Boanes' prior bad acts and use of alcohol and drugs at trial.[3]  (Doc. 1 at 6.)

On February 1, 2011, in accordance with *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), and *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), we issued a formal notice to Boanes that he either could have his Petition ruled on as filed, or withdraw it and file one all-inclusive § 2254 petition within the one-year statutory period

---

[2]The "prior bad acts" and "other matters" referred to in the one issue articulated for review in Boanes' appellate brief are enumerated in his Concise Statement and in the Statement of the Case section of Boanes' appellate brief (*see* Doc. 17-2 at 103-16).

[3]In articulating his ground for review in this Court, Boanes clarifies that he is taking the same approach as in his appeal from the denial of his PCRA petition where his one issue encompasses the specific instances of alleged ineffective assistance as they were raised in his PCRA Petition and Concise Statement.  (*See* Doc. 1 at 6.)

8

prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  (Doc.

6.)  On March 7, 2011, Boanes filed his Notice of Election indicating that he chose to

have the Court rule on his Petition as filed.  (Doc. 9.)  Accordingly, by Order dated

March 9, 2011, we directed service of the Petition on Respondents.  (Doc. 10.)

Following a request for an extension of time to respond to the Petition, which was

granted, on May 29, 2011, a Response to the Petition was filed by the York County

District Attorney's Office on behalf of Respondents.[4]  (Doc. 17.)  After obtaining an

extension of time, on June 27, 2011, Boanes filed a reply brief.  (Doc. 22.)

Accordingly, the Petition is fully briefed and ripe for disposition.

## II.   STANDARD OF REVIEW

AEDPA revised the standard of review for cases challenging state convictions

pursuant to 28 U.S.C. § 2254.  *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996).

Section 2254(a) provides that the district court "shall entertain an application for a

writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a

State court only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States."  Exhausted claims[5] that have been adjudicated

---

[4]Pursuant to our Order (Doc. 18), on May 31, 2011, Respondents filed a supplemental
response (Doc. 19) containing pages that inadvertently were omitted from the exhibits filed with the
original response.

[5]To satisfy the exhaustion requirement, a federal habeas petitioner must have presented the
(continued...)

on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see Matteo v. Superintendent, SCI-Albion*, 171 F.3d 877, 891 (3d Cir. 1999) (quoting *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1st Cir. 1998) (for a decision to be "contrary to" federal law, "Supreme Court precedent requires an

_____

[5](...continued)
facts and legal theory associated with each claim through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *see also Holloway v. Horn,* 355 F.3d 707, 714 (3d Cir. 2004). The exhaustion requirement is satisfied if a petitioner's claims are either presented to the state courts directly on appeal from the judgment of sentence, or through a collateral proceeding, such as a PCRA petition. *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). It is not necessary for a petitioner seeking federal habeas relief to present his federal claims to state courts *both* on direct appeal *and* in a PCRA proceeding. *Id.*

In the case at hand, there is no dispute that Boanes has exhausted the issue he raises in the instant Petition in his PCRA petition and on appeal to the Pennsylvania Superior Court from the denial of that petition.

outcome contrary to that reached by the relevant state court")).   In determining whether federal law is "clearly established," the focus is on the federal law clearly established at the time of the pertinent state court decision.  *See Greene v. Fisher*, - - - U.S. - - - -, 132 S. Ct. 38, 44 (2011).  *See also Greene v. Palakovich*, 606 F.3d 85, 106 (3d Cir. 2010).

"A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Renico v. Lett*, - - - U.S. - - - - , 130 S. Ct. 1855, 1862 (2010) (quoting *Williams*, 529 U.S. at 411.  Rather, the application must be "objectively unreasonable."  *Id.* (quoting *Williams*, 529 U.S. at 409).

"The test for § 2254(d)(2)'s unreasonable determination of facts clause is

whether the petitioner has demonstrated by clear and convincing evidence . . . that the state court's determination of the facts was unreasonable in light of the record." *Rountree v. Balicki*, 640 F.3d 530, 537-38 (3d Cir. 2011) (citing *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (internal quotations and citations omitted). A federal habeas court may not overturn a state court decision merely because it disagrees with a finding of fact, but instead must accord a state court's findings of fact "considerable deference under AEDPA." *Coleman v. Johnson*, 566 U.S. - - - -, - - - S. Ct. - - - - , 2012 WL 1912196 at *4 (May 29, 2012). Further, pursuant to 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A habeas petitioner must rebut this presumption with "clear and convincing evidence" of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 285-86 (3d Cir. 2000).

As the Supreme Court recently observed, "[i]f [the AEDPA standard for granting federal habeas relief] is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, - - - U.S. - - - - , 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J.,

concurring in judgment)).

## III.   DISCUSSION

In the instant Petition, Boanes asserts that his trial counsel was ineffective for eliciting irrelevant, prejudicial testimony and evidence about Boanes' prior bad acts and use of alcohol and drugs.  (Doc. 1 at 6.)

A person accused of a crime in federal or state court has a right under the Sixth Amendment to the effective assistance of counsel.  *Strickland v. Washington,* 466 U.S. 668, 685-86 (1984).  In *Strickland*, the Supreme Court articulated a two-prong test which must be satisfied for a petitioner to prevail on an ineffective assistance of counsel claim.  The two-prong test set forth in *Strickland* is the "clearly established federal law" applicable to ineffective assistance of counsel claims.  *Williams*, *supra*, 529 U.S. at 391.  "Under *Strickland*, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different."  *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (citing *Strickland*, 466 U.S. at 687).   Therefore, a convicted defendant asserting ineffective assistance of counsel must identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment.   *Strickland*, 466 U.S. at 690.  The reviewing court must then determine whether, in light of all circumstances, the

identified acts or omissions were outside "the wide range of professionally competent assistance." *Id.* There is a "strong presumption" that trial counsel's performance was reasonable and might be considered sound trial strategy. *Jermyn v. Horn,* 266 F.3d 257, 282 (3d Cir. 2001) (quoting *Berryman v. Morton,* 100 F.3d 1089, 1094 (3d Cir.1996)).

Under the second prong of *Strickland,* the defendant must establish that counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. To establish this, the defendant must demonstrate that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable. *Id.* More specifically, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Without proof of both deficient performance and prejudice to the defense . . . it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." *Bell v. Cone,* 535 U.S. 685, 695 (2002) (internal quotations and citation omitted). Where there is a reasonable basis for a tactical decision  made by defense counsel, a finding of ineffective assistance cannot be reached. *See Burger v. Kemp,* 483 U.S. 776, 794-95

14

(1987).  "[S]ubstantial deference is to be accorded counsel's tactical decisions."

*United States v. Wiener,* 127 F. Supp.2d 645, 648 (M.D. Pa. 2001). Likewise, counsel

cannot be deemed ineffective for failing to pursue meritless claims or objections.

*United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999); *United States v. Fulford*,

825 F.2d 3, 9 (3d Cir. 1987).  In such a situation, the second prong of the *Strickland*

test has not been satisfied.

　　"[B]ecause the *Strickland* standard is a general standard, a state court has even

more latitude to reasonably determine that a defendant has not satisfied that standard."

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  Thus, habeas review of a

*Strickland* claim is "doubly deferential."  *Id.*  A petitioner must show that the state

court's decision was objectively unreasonable.  *Woodford v. Visciotti*, 537 U.S. 19, 25

(2002).  It is not enough to convince a federal habeas court that, in its independent

judgment, the state court erred in applying *Strickland*.  *Bell*, 535 U.S. at 698-99.

**A.**　　**The state court determination of Boanes' ineffective assistance claim
was not contrary to *Strickland***

Under the "contrary to" clause of 2254(d)(1), we must determine whether the

state court arrived at a conclusion opposite to that reached by the Supreme Court on a

question of law, or if the state court decided the case differently than the Supreme

Court has on a set of materially indistinguishable facts.[6]  *See Williams*, *supra*, 529

U.S. at 413; *Matteo*, *supra*, 171 F.3d at 891.  The Pennsylvania Superior Court

articulated the standard for analysis of Boanes' claim as follows:

> When asserting a claim of ineffective assistance of counsel, the petitioner
> is required to make the following showing: (1) that the underlying claim
> is of arguable merit; (2) counsel had no reasonable strategic basis for his
> action or inaction; and, (3) but for the errors and omissions of counsel,
> there is a reasonable probability that the outcome of the proceedings
> would have been different.  ***Commonwealth v. Kimball,*** 555 Pa. 299, 724
> A.2d 326 (1999).

(*See* Doc. 17-2 at 129, 10/29/09 Pa. Super. Ct. Mem. Op.)[7]  Although Pennsylvania

courts apply a three-prong test in analyzing ineffective assistance claims, and that test

was applied by the Pennsylvania Superior Court in evaluating Boanes' claims, the

Third Circuit Court of Appeals has held that Pennsylvania's standard for evaluating

ineffective assistance claims is not contrary to *Strickland*.  *See Jacobs v. Horn*,  395

F.3d 92, 106 n.9 (3d Cir. 2005) (citing *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir.

2000) (holding Pennsylvania's three-prong test does not contradict the two-prong test

---

[6]In considering a § 2254 petition, federal courts review the "'last reasoned decision'" of the state courts on the petitioner's claims, which in the case at hand is the Pennsylvania Superior Court's decision affirming the denial of PCRA relief.  *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)).

[7]The PCRA Court cited a different case, *Commonwealth v. Wallace*, 724 A.2d 916, 921 (Pa. 1999) in articulating the applicable standard for disposition of Boanes' ineffective assistance claims (*see* Doc. 17-2 at 81).  While the statement of the standard in *Wallace* differs slightly from *Kimball*, the standard is substantively the same.

set forth in *Strickland*, and thus is not contrary to established Supreme Court precedent)). In particular, the Third Circuit has held that, even though the question of the merit of an underlying claim is not an explicit step under *Strickland*, requiring a showing that the underlying claim has merit is not in conflict with *Strickland*. *Rompilla v. Horn*, 355 F.3d 233, 248 n.9 (3d Cir. 2004), *reversed on other grounds*, *Rompilla v. Beard*, 545 U.S. 374 (2005). Instead, it is considered a determinative factor in the "deficient performance" prong of the *Strickland* analysis. *See Werts*, 228 F.3d at 203-04; *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998) (counsel not ineffective for failing to raise meritless claims).

Based on the foregoing, we find that, in applying Pennsylvania's three-prong test to Boanes' ineffective assistance claims, the state court did not arrive at a conclusion opposite to that reached by the Supreme Court on a question of law or reach a contrary result on a set of facts materially indistinguishable from *Strickland*.

### B.     The state court decision did not involve an unreasonable application of *Strickland*

In the instant Petition, Boanes asserts that the state court unreasonably applied *Strickland* in determining that his trial counsel was not ineffective when he elicited allegedly irrelevant, prejudicial testimony and evidence about Boanes' prior bad acts and use of alcohol and drugs. (Doc. 1 at 6.) Specifically, Boanes asserts that counsel

was ineffective in eliciting testimony from him on direct examination that his parents were incarcerated; that he first owned a gun when he was thirteen (13) years old; that he routinely carried a gun; that he was in juvenile placement; and that he drank alcohol, smoked marijuana, and took ecstasy pills on the day of the incident.  (*Id.*)

In considering whether the state court determination that counsel was not ineffective is an unreasonable application of *Strickland*, we are mindful of the United States Supreme Court's instruction that "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington, supra*, 131 S. Ct. at 785.  Accordingly, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*

In support of its conclusion that the record supported the PCRA Court's decision to deny relief on Boanes' ineffective assistance of counsel claims, the Pennsylvania Superior Court pointed to the following analysis by the PCRA Court regarding whether Boanes was prejudiced by his counsel's performance at trial:

> The [c]ourt would initially observe that during the trial of the case both the victim, Richard Newson, and an eye witness to the shooting, DaSha[w]n Harrison, testified that they were at Newson's apartment during the early morning hours of August 21, 2002.  Both testified that [Boanes] appeared and was upset with the fact that Etay Clay was also present at Newson's apartment. [Boanes] expressed that he felt Newson,

as his cousin, was 'disrespecting' him by having Clay at his apartment as he, [Boanes], was 'messing with' Clay.  Both testified that during a heated discussion over these circumstances [Boanes] pulled a handgun and pointed it at Newson.  The situation was de-escalated briefly and [Boanes] left the scene.  However, he returned in short order approximately 15 minutes later and re-engaged the confrontation with Newson again producing the handgun and on this occasion shooting Newson in the abdomen.  Newson recovered from the gunshot.

During the PCRA hearing, [trial counsel] testified that [Boanes] initially maintained his innocence by saying that he 'didn't do it.'  However, during the course of the trial when it became apparent that the evidence and testimony from Newson and Harrison demonstrated that [Boanes] had produced the handgun on two occasions and on the second encounter shot Newson in the abdomen, [Boanes] changed his position to indicate that although he discharged the firearm, he did so accidentally and did not have any intention to shoot or harm Newson. [Trial counsel] testified that quite obviously it became necessary therefore to have [Boanes] testify in that regard.  In doing so, [trial counsel] also elicited from [Boanes] that he had ingested alcohol, marijuana and ecstasy during the afternoon and evening preceding the shooting and also attempted to demonstrate and [elicit] sympathy and understanding for his client by bringing out information regarding his family background and including abandonment by parents; being raised by his grandmother; and that he was exposed to the vagaries of the street and street values.  Accordingly, during his trial testimony, [Boanes] also testified that he did not intend to shoot his cousin, Newson, or to do him any harm.

It is the [c]ourt's conclusion that [Boanes] has failed to demonstrate 'a reasonable probability that the result of the proceedings would have been different' had this evidence not been introduced.  We therefore conclude that [Boanes] has failed to establish the Prejudice Prong and that he is thereby not entitled to PCRA relief.

(Doc. 17-2 at 131-133, 10/29/09 Pa. Super. Ct. Mem. Op.)

The Pennsylvania Superior Court also adopted the following analysis by the

19

PCRA Court regarding whether counsel was ineffective in eliciting testimony and

evidence regarding Boanes' use of drugs and alcohol on the day of the events in

question:

> Neither voluntary intoxication nor voluntary drugged condition is a
> defense to Criminal Attempt-Criminal Homicide.  Further, [trial counsel]
> conceded that he was unaware of this principle in the law, as he believed
> that voluntary intoxication could negate the specific intent to kill required
> for a conviction of Criminal Attempt-Criminal Homicide.  Nonetheless,
> we would observe that because it became necessary for [Boanes] to
> testify as to the defense of accidental shooting, evidence regarding
> intoxication and drugged condition was admissible in regards to the
> determination and assessment of his credibility.  Pennsylvania Courts
> have consistently held that intoxication on the part of a witness at the
> time of an occurrence about which he has testified is a proper matter for
> the Jury's consideration as affecting credibility.

> Our Courts have further recognized that judicial scrutiny of counsel's
> performance must be highly deferential and in favor of the presumption
> of [counsel's] ineffectiveness.  As our Appellate Courts have recognized
> it is often too easy when examining counsel's defense strategies, and in
> particular when proven unsuccessful, to conclude that a particular act or
> omission was unreasonable and therefore, because of the difficulties
> inherent in making this evaluation, the court must indulge a strong
> presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is [Boanes] must overcome the
> presumption that, under the circumstances the challenged action might be
> considered sound trial strategy.

> At the PCRA hearing [trial counsel] testified that in addition to his
> client's changed decision to maintain that the shooting, although it did in
> fact occur, was accidental, he made a conscious effort to establish
> sympathy and understanding for his young client.  In that regard he
> elicited testimony that [Boanes'] parents had abandoned him and were
> recently incarcerated and that he had therefore been raised by his
> grandmother.  In addition, [Boanes] testified that he had been briefly in a

juvenile placement facility and had embraced negative 'street values' at an early age.  It was therefore not unusual for [Boanes] to possess and carry firearms through his early teen years. [Trial counsel] testified that it was his conscious decision to incorporate these circumstances into his client's testimony, that he did not intend to shoot and hurt his cousin, Newson, and that although he was upset with Newson's decision to allow Clay into his apartment, the shooting was accidental in nature.

Although this evidence apparently did not negate and overcome the Commonwealth's overwhelming evidence, this [c]ourt is unable and unwilling to conclude that there was no reasonable basis behind [trial counsel's] strategy.

(*Id.* at 133-134.)

In further explanation of its conclusion that the record supported the denial of relief on Boanes' ineffective assistance of counsel claims, the Pennsylvania Superior Court observed that, while counsel's strategy of eliciting testimony from Boanes on direct examination as to his intoxication and drug use at the time of the incident as an affirmative defense may have been "misguided," this evidence still could have come in on cross-examination to impeach Boanes' recollection of the event, and therefore, eliciting the evidence "preemptively on direct examination would work to soften the blow or diminish the effects of the impeachment." (*See* Doc. 17-2 at 134 (citing *Commonwealth v. Small*, 741 A.2d 666, 677 (Pa. 1999), *cert. denied*, 531 U.S. 829 (2000) (holding that while evidence of witness' intoxication at time of occurrence about which witness testified was proper matter for jury's consideration, jury should not consider for impeachment purposes witness' use of drugs or alcohol at other

irrelevant times); *Commonwealth v. English,* 699 A.2d 710, 715, n.7 (Pa. 1997)

(reversing award of new trial based, in part, upon expert opinion on cross-examination

suggesting that death had been intentionally caused, which was beyond scope of

charge of involuntary manslaughter).)

Moreover, the Superior Court concluded that "counsel's decision to elicit

sympathy from the jury for his client regarding his client's street life constitutes a

rational trial strategy."  (*Id.* (citing *Commonwealth v. Pate*, 617 A.2d 754, 761 (Pa.

Super. 1992), *appeal denied*, 634 A.2d 219 (Pa. 1993) (denying as completely

meritless ineffective assistance claim based on counsel eliciting prior bad act of

defendant to establish witness' bias); *Commonwealth v. Wienckowski*, 537 A.2d 866,

869 (Pa. Super. 1988) (affirming denial of ineffective assistance claim where counsel

expressed distaste for his client's "seamy" lifestyle in closing argument to establish

common ground with jury and demonstrate it was possible to be shocked by

defendant's lifestyle yet reach a verdict of not guilty on crimes charged).)

Finally, the Pennsylvania Superior Court found that, "given the properly

admitted overwhelming evidence of [Boanes'] guilt in this case", he could not

demonstrate a reasonable probability that the outcome of the proceedings would have

been different.  (*Id.* at 134-35.)

Boanes argues that, contrary to the state court's conclusion that his trial

22

counsel's decision to elicit sympathy from the jury for his client through testimony regarding his street life and alcohol and drug use constituted a rational trial strategy, "no rational individual could think that painting a picture of one's client evermore frightening than the prosecution could paint would do anything other than doom the client." (*See* Doc. 22, Reply Br., at 7.)  Boanes also suggests that, based upon the testimony that his trial counsel elicited in accordance with his strategy, "[i]t would not be unreasonable to conclude that prison is the place for those who live by a set of rules incompatible with those of the community." (*See id.* at 15.)  Our role in federal habeas review is to determine whether the state court's application of *Strickland* in this case was "objectively unreasonable."  *See Renico, supra,* 130 S. Ct. at 1862.  As such, we are not free to accept Boanes' invitation to substitute our own judgment for that of the state court, but instead are limited to determining whether the state court unreasonably applied *Strickland* in this case.  Upon review of the record, and in consideration of the analysis by the state court as summarized above, it is apparent that the state court applied the correct standard governing ineffective assistance claims and reasonably applied that standard in determining that the denial of relief on those claims was appropriate.

> **C.   The state court decision was not based upon an unreasonable determination of the facts in light of the evidence presented in the state court**

In considering the third prong of *Kimball, supra*, with respect to Boanes' ineffective assistance claim, namely whether Boanes could demonstrate a reasonable probability that the outcome of the proceedings wold have been different but for his trial counsel's alleged ineffectiveness, the state court determined that Boanes could not satisfy this prong in light of "the properly admitted overwhelming evidence of his guilt in this case." (*See* Doc. 17-2 at 134-35.)  In the proceedings before this Court, Boanes argues that this determination by the state court is an unreasonable determination of the facts in light of the evidence presented.  (*See* Doc. 2, Boanes' Mem. of Law, at 15-16 (citing 28 U.S.C. § 2254(d)(2)).)  Specifically, Boanes argues that "the verdict of guilt on the charge of attempted homicide was only weakly supported by the record" because "both of the Commonwealth's lay witnesses, Dashawn Harrison and Richard Newson (the victim), gave testimony that would indicate that Boanes did not have the requisite intent to kill," and because the surgeon who treated Newson testified that the bullet that caused Newson's wound to the abdomen "did not hit any major blood vessels or vital structures." (*See id.*)  Boanes does not set forth the specific testimony he is referring to, but he does provide citations to portions of the trial transcript in support of his argument.  (*See id.*)

In the portions of the trial transcript cited by Boanes with regard to his contention that Harrison and Newson provided testimony indicating that Boanes

lacked the requisite intent to kill, Harrison testifies on direct examination that, after

Boanes shot Newson, Newson fell down, Harrison called the police, and before the

police arrived, Boanes called Harrison's cell phone and asked if he (Boanes) shot

Newson.  (*See* Doc. 17-1 at 36, Pages 63-64.)  On redirect examination, when asked

several times if he had told the police about this phone call he received from Boanes,

Harrison first responded "I might have" then "No" then "I mentioned it, yes" and

finally "I know what I said."  (*See id.* at 38-39, Pages 68-69.)  When asked if he had

been talking to Boanes during the trial while the jury was out of the room, Harrison

responded, "Yeah, of course.  That's my cousin."  (*See id.* at 39, Page 69.)  Boanes

also points to Newson's testimony that Boanes "looked shocked" after he shot

Newson as evidence indicating that Boanes lacked the requisite intent to kill.  (*See id.*

at 46, Page 84.)

   With regard to his argument that the guilty verdict was weakly supported by the

record because there was testimony that the bullet Boanes fired  "did not hit any major

blood vessels or vital structures," Boanes points to portions of the trial transcript

containing testimony by Newson that he felt the bullet go through his "lower area"

and that "it didn't come up in my chest area" (Doc. 17-1 at 47, Page 85); testimony on

direct examination by the surgeon who treated Newson that the path of the bullet was

"within about an inch or so" to major blood vessels (*id.* at 58, Page 107); and

testimony by the surgeon on cross examination that he did not see any injury to vital structures and that the victim seemed to have control of his bowel and bladder functions upon discharge from the hospital (*id.* at 60, Page 111).

Boanes has the burden to demonstrate by "clear and convincing evidence" that the state court decision that there was overwhelming evidence of his guilt was based upon an unreasonable determination of the facts.  *See Rountree*, *supra*, 640 F.3d at 537-38.  Upon review of the record, we find that, in citing to the aforementioned portions of the trial transcript, Boanes fails to provide clear and convincing evidence to overcome the presumption of correctness to which the state court finding is entitled that there was "overwhelming evidence" of Boanes' guilt.  This finding is based upon the testimony by Newson and Harrison that Boanes pulled a handgun and pointed it at Newson on two occasions on the night of the incident, and on the second encounter, shot Newson in the abdomen.  Accordingly, Boanes is not entitled to habeas relief under § 2254(d)(2).

## IV.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) will be denied.  We also decline to issue a certificate of appealability based on the reasoning in this Memorandum.  However, Petitioner is advised that he has the right for thirty (30) days to appeal our order denying his petition, *see* 28 U.S.C. § 2253(a);

Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks, and obtains, a certificate of appealability from the court of appeals.  *See* Fed. R. App. P. 22.  An appropriate Order will enter.